**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**Tonodus Howard, Abdul Smith, Carl Smith, Charles Stringer, Michael Tims, and Gregory Traylor,**

**Plaintiffs,**

**v.**

**Coca-Cola Enterprises, Inc. d/b/a Midwest Coca-Cola Bottling Company and The Coca-Cola Bottling Company of Cedar Rapids,**

**Defendants.**

**Civil No. 00-2207 (DDA/SRN)**

**ORDER**

---

Steven W. Cooper, Esq., Kathryn J. Cima, Esq., and Stacey R. Everson, Esq., on behalf of Plaintiffs.

Maury Nicely, Esq., T. Harold Pinkley, Esq., on behalf of Defendants.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

The above entitled matter came before the undersigned United States Magistrate Judge on Plaintiffs' Motion to Supplement the Complaint (Doc. No. 24).

Plaintiffs move to Supplement the Complaint to add three new counts. Since the commencement of this action, Plaintiffs have received Notice of Right to Sue Letters from the Equal Employment Opportunity Commission and Letters of dismissal from the Minnesota Department of Human Rights. Therefore, each Plaintiff moves to Supplement the Complaint to include counts for discrimination and retaliation under Title VII, 42 U.S.C. § 2000e, et seq. and the Minnesota Human Rights Act, Minn. Stat. § 363.01 et seq.

FILED AUG 23 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

In addition, Plaintiff Abdul Smith moves to supplement the complaint to include a count for violation of the Parenting Leave Act, Minn. Stat § 181.940 et seq. as well as the Family Medical Leave Act, U.S.C. § 2611 et seq. arising from his termination of employment in March, 2001.

Based upon the motions, all pleadings, affidavits, exhibits, and other documents submitted to the Court in support thereof and opposition thereto, and being in all respects duly advised, the Court hereby orders adjudges and decrees as follows:

1. Plaintiff's Motion to Supplement the Complaint (Doc. No. 24) is hereby **GRANTED:** Plaintiff is granted leave to file the Supplemental Complaint attached to these pleadings. Service of the Supplemental Complaint will be deemed proper upon mailing to the Defendant's attorney of record.

BY THE COURT

Dated: August 23, 2001

Susan Richard Nelson

Susan Richard Nelson

IN THE UNITED STATES DISTRICT COURT
UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

TONODUS HOWARD, ABDUL SMITH, CARL SMITH, CHARLES STRINGER, MICHAEL TIMS AND GREGORY TRAYLOR,

Plaintiffs,

vs.

COCA-COLA ENTERPRISES INC. d/b/a MIDWEST COCA-COLA BOTTLING COMPANY and THE COCA-COLA BOTTLING COMPANY OF CEDAR RAPIDS,

Defendant.

Case No. 00-2207

**PLAINTIFFS' SUPPLEMENTAL COMPLAINT**

---

Plaintiffs Tonodus Howard, Abdul Smith, Carl Smith, Charles Stringer, Michael Tims and Gregory Traylor, through their attorneys, The Cooper Law Firm, for their Complaint against Defendant COCA-COLA ENTERPRISES INC. d/b/a MIDWEST COCA-COLA BOTTLING COMPANY state and allege as follows:

**PARTIES**

1. Defendant COCA-COLA ENTERPRISES INC., a Delaware corporation, is located at 2500 Windy Ridge Parkway, Atlanta, Georgia 30339. It is doing business as MIDWEST COCA-COLA BOTTLING COMPANY ("Coke") at 2750 Eagandale Boulevard, Eagan, Minnesota 55121-1291. Coke's agent for service of process in Minnesota is Corporation Service Company at 33 South Sixth Street, Multifoods Tower, Minneapolis, Minnesota 55402.

2. Defendant Coke is responsible for employment-law claims arising from conduct at its Eagan facility, and has responsibility for all employer obligations and entitlements of all entities that formerly owned and operated its Eagan facility and employed its workers.

3. Plaintiff Tonodus Howard ("Howard") is a 30 year-old Black male, residing in Minnesota. Defendant Coke has employed Howard since approximately November of 1992, most recently as a driver.

4. Plaintiff Abdul Smith ("A. Smith") is a 29 year-old Black male, residing in Minnesota. Defendant Coke has employed A. Smith since approximately July of 1998 as a merchandiser.

5. Plaintiff Carl Smith ("C. Smith") is a 43 year-old Black male, residing in Minnesota. Defendant Coke has employed C. Smith since approximately June of 1998, most recently as a forklift driver.

6. Plaintiff Charles Stringer ("Stringer") is a 45 year-old Black male, residing in Minnesota. Defendant Coke employed Stringer from approximately May of 1997 through August of 1999 as a stager.

7. Plaintiff Michael Tims ("Tims") is a 38 year-old Black male, residing in Minnesota. Defendant Coke has employed Tims since approximately 1984 as a machine operator.

8. Plaintiff Gregory Traylor ("Traylor") is a 28 year-old Black male, residing in Minnesota. Defendant Coke has employed

Traylor since approximately October of 1998, most recently as a merchandiser.

**ALLEGATIONS**

9. Defendant Coke has subjected Plaintiffs (and other non-white employees) to a steady barrage of continuing racial discrimination, harassment and reprisal. Such misconduct includes, among other things:

A. Black employees are subjected to unnecessary scrutiny, criticism and discipline in situations where similarly situated white employees are not so mistreated:

1. Defendant Coke counts and scrutinizes how many times Black employees talk to other Black employees in the workplace but does not so scrutinize white employees for similar conduct.

2. Defendant Coke photographs alleged work errors of Black employees to create paper trails justifying disciplinary action while not so treating similarly situated white employees.

3. Defendant Coke places disciplinary notices in the files of Black employees without those employees having any knowledge of the notices.

4. Defendant Coke does not allow Black employees to drive their personal vehicles to the stores they service (unlike white employees) because management cannot tell when Black employees are in

the stores unless their trucks are outside, thereby thwarting ambush audits.

5. Defendant Coke disciplined a Black driver for using a store's front door while it did not discipline a white driver who blocked the same store's parking lot with his truck.

6. Defendant Coke disciplines Black employees who park in the motorcycle parking lot in the winter while white employees who park in that lot are not disciplined.

7. Defendant Coke administers discipline and drug tests to Black employees who have accidents on the job but does not administer discipline and drug tests to white employees who have accidents on the job even when those accidents are of a more serious nature than those of Black employees.

8. Defendant Coke allows white employees who damage trucks to remain employed while terminating or suspending the employment of similarly situated Black employees.

9. Defendant Coke disciplines Black employees more harshly for accidents than it does white employees.

10. Defendant Coke treats white employees who fail drug and alcohol tests more favorably than Black

employees who pass those tests.

11. Defendant Coke documents errors of Black employees more thoroughly than white employees.

12. Defendant Coke monitors, times, criticizes and disciplines Black employees regarding breaks, but does not so treat similarly situated white employees.

13. Defendant Coke suspends and terminates Black employees for less serious infractions than similarly situated white employees who are not suspended or terminated.

14. Defendant Coke intensely audits the work of Black employees while not treating white employees similarly.

15. Defendant Coke disciplines Black employees who do not "spin" bottles to hide the reduced number of ounces per bottle by turning the ounces to the back, so customers won't realize they are paying more for less pop.

16. Defendant Coke falsely accused a Black applicant of being repeatedly in jail and used the false accusation as an excuse not to hire him. Defendant also forced the Black applicant to prove he wasn't in jail by gathering documentation from numerous jurisdictions. Defendant Coke then told

the applicant it did not believe his proof.

17. Defendant Coke criticizes Black employees for using the telephone or receiving calls at work but does not criticize white employees for similar conduct.

18. Defendant Coke scrutinizes Black employees so intensively and is so intent on finding errors in their work that management even does so during their own vacations.

19. Defendant Coke fired a Black driver who had an accident (but passed a drug test) but did not fire white employees who were similarly situated.

20. Black employees are made to report breaks and lunches while white employees are not.

21. Defendant Coke fires Black employees who have fewer disciplinary points than white employees who are not fired.

22. Black employees who have accidents on the job are drug tested while similarly situated white employees are not.

23. Defendant Coke disregards progressive discipline standards for Black employees.

B. Black employees are singled out for mistreatment in order to make it more difficult to perform their jobs, advance or excel in situations where similarly situated

white employees are not so mistreated:

1. Defendant Coke disciplines Black employees for its own faulty and inadequate training.
2. Defendant Coke forces Black employees to test before they are prepared in order to deny them promotions.
3. Defendant Coke disciplined a Black employee for not wearing a uniform when Coke didn't provide this employee with a uniform in his size.
4. Defendant Coke allows white employees to skip the check-in process at the plant, drive directly to their stores from home and have their papers faxed to them. Black employees are not afforded these advantages.
5. Defendant Coke extends probation of Black employees but does not extend probation of similarly situated white employees.
6. Defendant Coke sets up Black employees for disciplinary action, including termination.
7. Defendant Coke criticizes Black employees for white employees' faulty displays.
8. Defendant Coke assigns more difficult and less profitable tasks to Black employees.
9. Defendant Coke assists white employees but not similarly situated Black employees.

10. When Black employees perform white employees' routes in the manner the white employees had performed them, Black employees are criticized and blamed for the white employees' errors.

11. White store managers are allowed to ignore, delay, and otherwise discriminate against Black employees.

12. Defendant Coke allows white employees to vandalize Black employees' vehicles and equipment.

C. Black employees are expected to tolerate disrespectful and unfair treatment including race-based ridicule, harassment, taunting, stereotypes, insults and slurs in situations where similarly situated white employees are not so treated:

1. Defendant Coke verbally abuses Black employees in situations where similarly situated white employees are not so mistreated.

2. Defendant Coke allows white employees to throw objects at Black employees and refuses to discipline the perpetrators upon complaints.

3. Defendant Coke says certain Blacks don't have "the look" or "what it takes."

4. While Defendant Coke allows white employees free use of telephones, Black employees are told to pay 35 cents.

5. Defendant Coke makes references to Black people as "the brothers," "sambo," "coon," "spear chuckers," "jungle bunny," or "those people."

6. Defendant Coke allows customers/stores to mistreat Black employees and then endorses the mistreatment by disciplining Black employees who object to the mistreatment.

7. Defendant Coke allows white employees to threaten and harass Black employees, including:

   a. "Niggers will die" was written on plant walls;

   b. White employees played a card game they called "Screw your nigger";

   c. "Mike Tims is targeted for death" was written on plant walls;

   d. "KKK" was written on plant walls;

   e. Blacks were said to all drive Cadillacs;

   f. A white employee said Ray Charles smiles because he doesn't know he's Black;

   g. A Black employee was told (about his white girlfriend), "What's the matter? Aren't there enough of your kind to go around?";

   h. A Black employee was told people couldn't see his brother in a dark alley because he was too black;

i. Whit employees displayed a list of Ebonic phrases which made fun of how Black people allegedly talk;

j. Racist cartoon strips were displayed at the plant including one that depicted a monkey reading a book with a Black man standing in the corner wearing a dunce cap with his finger in his mouth. The caption read, "If he can do it, you can too!";

k. Racial jokes are told by supervisors and others;

l. Racist epithets were written on bathroom walls;

m. Racist epithets were written on Black employees' lockers;

n. White employees said, "Nigger get out of here, we don't want you working here";

o. A white employee threatened to "kick [a Black employee's] ass";

p. White employees tell Black employees, "You don't belong here,";

q. A white employee said, "Me and Tims are gonna have some fried chicken and watermelon"; and

r. White employees made racist comments about an Asian employee's eyes.

8. Defendant Coke instructs Black employees to politely tolerate racist behavior by customers while refusing to act on complaints of the same.

9. White employees routinely make racist remarks about areas of the city with primarily non-white residents, including "Watch out in those neighborhoods with the brothers...they'll steal your stuff." Some whites said they should be "packing" (carrying guns) and wearing bullet proof vests when they go into "Black" neighborhoods.

10. Defendant Coke states that areas of the city are primarily non-white are more dangerous than primarily white areas and refers to them as "the hood," "the jungle," and "the ghetto." A Target store in a primarily non-white neighborhood was referred to as "Targhetto."

11. Defendant Coke yells and swears at Black employees while not so mistreating white employees.

12. Defendant Coke allows white employees to call Black employees offensive names including, "colored," "you people," "those people," "nigger," "lazy nigger," "stupid nigger," "boy," "lazy mother fucker" and "piece of shit."

13. Defendant Coke refused a Black employee's request for water and sent him to a water fountain across

the room.

14. Arab-Americans are referred to as "rag-heads" and "dirty Arabs."

15. A manager told a Black employee he was looking "pale" and laughed (in the presence of co-workers).

D. Black employees are subjected to differential treatment regarding work assignments and other terms and conditions of employment in a manner that is less favorable than similarly situated white employees:

1. Defendant Coke deprives Black employees of and penalizes them for taking vacation time while not depriving or penalizing similarly situated white employees.

2. Defendant Coke disciplines Black employees who perform white employees' work in the manner the white employees normally perform it.

3. Defendant Coke forces Black employees to perform work in violation of injury-related work restrictions while not forcing similarly situated white employees to perform work in violation of such restrictions.

4. Defendant Coke denies Black employees equal opportunities for posted jobs.

5. Defendant Coke violates union rights of Black

employees including firing and disciplining them without union representation.

6. Defendant Coke writes up Black employees for mistakes on other people's routes.

7. Defendant Coke alters hours to accommodate white junior employees, but excludes Black senior employees from jobs by use of creatively constructed job requirements, hours and capacity tests.

8. Defendant Coke favors white employees with regard to overtime assignments.

9. White employees are allowed longer and more frequent breaks than Black employees.

10. Black employees suffer false claims by Defendant Coke that their restrictions disqualify them from open positions.

11. Defendant Coke fails to promote Black employees while promoting similarly situated or less qualified white employees.

12. White employees with worse driving records than Black employees are allowed to remain in drivers' training.

13. Black employees need medical or FILA proof for emergency days off while white employees are allowed time off simply for not having a baby

sitter.

14. Black employees suffer race-based violations of call-back rights.

15. Defendant Coke forces Black employees to perform white employees' work while not forcing similarly situated white employees to perform Black employees' work.

16. Defendant Coke lays off Black employees while not laying off similarly situated Black employees.

17. Black employees are falsely accused of having a "hidden agenda" or "ulterior motive" when they make race complaints.

18. Black employees suffer lack of confidentiality concerning communications with management.

19. Defendant Coke places white employees with less seniority over Black employees with more seniority.

20. Black employees are made to stay late to perform white employees' work.

21. Black employees are criticized for actions routinely engaged in by white employees.

22. Defendant Coke deprives Black employees of and penalizes them for taking a sick time and FILA leave while not depriving or penalizing similarly situated white employees.

E. Defendant Coke engages in racial segregation and isolation in the workplace:

1. Defendant Coke hires and retains a disproportionately small percentage of non-white employees and managers. Non-whites are restricted to positions entailing "grunt work."
2. Defendant Coke keeps Black employees from taking a driving class while allowing whites who had accidents to take the class.
3. Defendant Coke accepts white employees' versions of events over the word of Black employees.
4. Defendant Coke refused to allow Black employees who signed up for CDL to train but actively recruited white employees for the same training.
5. White employees are allowed to sit in supervisors' offices with their feet up on the desk while Black employees work.
6. White employees are promoted more often and earlier than similarly situated Black employees.
7. Defendant has maintained discriminatory practices with regard to management opportunities.

F. Defendant Coke engages in a pattern and practice of racist marketing techniques:

1. Defendant Coke refers to neighborhoods with higher percentages of non-white residents as "the hood,"

"the ghetto," "the jungle" and other offensive terms.

2. Defendant Coke targets neighborhoods with higher concentrations of non-white residents for sweeter, syrupy drinks such as grape and orange soda, resulting in racial commentary about those non-white residents. In addition, Coke specifically offers deals to stores in "minority" neighborhoods to push those drinks.

3. Defendant Coke refers to deliveries in primarily Black neighborhoods as "going down in the hood with the brothers."

4. Defendant Coke allows outdated product to remain on shelves in neighborhoods with higher concentrations of non-white residents while insisting that outdated products be removed from the shelves in neighborhoods with higher concentration of white residents.

5. Defendant Coke directs that shoddy, dirty and broken displays and equipment be used in neighborhoods with higher concentrations of non-white residents while insisting that displays and equipment used in primarily white neighborhoods be in pristine condition.

G. Black employees are subjected to defamation and false

accusations based on race:

1. Defendant Coke has defamed Black employees by escorting them out of the building which communicated that they were a threat to the safety of others. One Black employee even suffered the humiliation of having Coke call the police to haul him off the property over a child support issue.
2. Defendant Coke falsely blames Black employees for mistakes and poor work performance of white employees.
3. Defendant Coke writes up Black employees for problems caused by white employees.
4. Defendant Coke spread the news of the termination of a Black employee before the employee was informed of the termination.
5. Black employees are falsely accused of not performing their jobs.
6. Defendant Coke falsely accused Black employees of being "lazy" or faking injuries.
7. Black employees are falsely accused of theft.

H. Black employees are subjected to reprisal/retaliation for objecting to and reporting incidents of race-based discrimination, harassment and other illegal conduct:

1. Defendant Coke attempts to exacerbate injuries of Black employees placed on light duty.

2. Defendant Coke tries to force injured Black employees to work in violation of restrictions.

3. Black employees who complain of racism are told, "Oh, do you want to be like Mike Tims?"

4. Defendant Coke barred a Black employee from its premises with the excuse that he was on crutches and insurance issues precluded him while allowing a white employee to work on crutches.

5. Defendant tells Black employees they are not "liked" if they complain about racism.

6. Defendant Coke accuses Black employees who object to/complain about racism of "whining."

7. A Black employee who objected to/complained about racism was told he was going to cause another "post office shooting."

8. Defendant Coke threatened to fire a Black employee if he continued to report racism.

9. Defendant Coke trivializes Black employees' complaints of racism by telling them they have "no proof."

10. Although a Black employee had call-back rights over junior employees, Defendant Coke brought the white junior employee back before him.

11. Black employees are subjected to reprisal for complaining: supervisors inform the objects of

complaint who then retaliate against the complaints.

12. Defendant Coke made a Black employee take a capacity test that had nothing to do with the job he was applying for.

13. Defendant Coke created false qualifications for a position after a Black employee grieved being kept out of the position. When Coke was confronted with this issue, it claimed the Black employee could not have the position because he could not stage pallets, which was untrue. In fact, staging pallets had nothing to do with the position and the white, junior employee Coke wanted to keep in the position was on restrictions and was not staging pallets.

14. Defendant Coke retaliates against Black employees who talk to or associate with those who make complaints about racism.

15. Defendant Coke accuses Black employees who make complaints of "playing the race card."

16. Defendant Coke stole a Black employee's log books, records, locks and keys.

17. Defendant Coke forces Black employees to cover for white employees on break. It then punishes the Black employees if the white employees aren't back

from their breaks on time.

18. Defendant Coke did not allow a Black employee to exercise his seniority rights even though his doctor said he could perform the job.

19. Although a Black employee had call-back rights over junior white employees, Defendant Coke brought the white, junior employees back before him.

20. Defendant Coke barred a Black driver from returning to a store about which he had made a race-based complaint.

21. Black employees who object to/complain about racism are told they have "ruffled a lot of feathers."

I. Defendant Coke fails and refuses to prevent or remedy its racism environment and does not take action in response to the complaints of Black employees:

1. Defendant Coke tells Black employees who complain about racism that the complained-of conduct "isn't based on race."

2. Defendant Coke allows white employees to throw objects at Black employees and refuses to discipline the perpetrators upon complaints.

3. Defendant Coke fails to investigate Black employees' complaints of racism.

4. Defendant Coke tells Black employees who complain about racism that they have "no proof."

5. Defendant Coke disregards and disbelieves Black employees who complain about racism while taking the word of white employees at face value.

6. Black employees who suffer vandalism to their vehicles and complain of same are told to park their vehicles elsewhere.

7. When a Black employee complained of a white employee calling him a "nigger," Defendant Coke told the Black employee, "You two need to not talk about each other."

8. Defendant Coke told Black employees who complain of racism to "work it out."

9. Defendant Coke allows white employees to call Black employees offensive names and refuses to discipline the perpetrators upon complaints.

10. Defendant Coke has not initiated security measures nor cameras to protect Black employees. In fact, "security guards" have been seen simply driving to various check points to swipe their cards at each location, get back in their cars and drive off.

11. A Black employee found a white supremacist card on his car. He complained to management and the number on the card was dialed. The message on the

card's answering machine said, "We hate niggers and we will kill any nigger we find in this neighborhood." Management laughed about this death threat and refused to take any action to protect this employee or ascertain the origin of the threat.

12. When a Black employee complained to management about a white employee yelling "Boy" across the warehouse, reprisal ensued including white co-workers howling on the intercom.

13. Managers/supervisors are involved with/aware of the misconduct described herein but do not take prompt remedial or preventive action.

10. Defendant Coke's management knew or should have known of the abusive conduct. Management has participated in and condoned the abuse, creating a workplace environment that encourages and exacerbates racial hostility.

11. Defendant Coke has failed to prevent the racially hostile environment pervading the workplace.

12. Defendant Coke failed to maintain adequate policies and practices to prevent misconduct. Although Plaintiffs and other non-white employees repeatedly complained to Defendant, and Defendant had substantial notice of the racially hostile environment, Defendant Coke filed to implement legally sufficient corrective action, promptly and appropriately, to remedy

misconduct and ensure employee safety.

13. Plaintiffs are members of the class of persons protected by federal and state laws forbidding discrimination, harassment and reprisal in employment.

14. At all relevant times, Plaintiffs have been "employees" and Defendant Coke has been their "employer" under pertinent law, 42 U.S.C. §§ 2000e(b), 2000e(f), Minn. Stat. § 363.01 subd. 16, 17.

15. Defendant Coke is liable, directly and vicariously, for the acts of its managers and supervisors, and for the acts of its agents who have perpetrated the misconduct alleged herein.

16. Defendant Coke is vicariously liable for the acts of workers who have been employed at its Eagan bottling facility at all times relevant.

17. Defendant Coke ratified the misconduct of its managers, supervisors, and agents.

18. As a direct and proximate result of Defendant Coke's illegal acts, Plaintiffs have suffered significant financial, physical and emotional injuries including, but not limited to, bodily injury and physical sickness, severe emotional distress, physical injury, lost income, diminished earning capacity and other losses, exceeding $50,000.00

19. Following the filing of this complaint, Plaintiffs each received Right to Suit Letters from the Equal Employment Opportunity Commission.

20. After Plaintiffs commenced this action, Defendant fired Plaintiff Abdul Smith for taken medical leave that was permitted by the Family and Medical Leave Act. Defendant did not allow Plaintiff adequate time to provide a doctor's excuse. This was a violation of the FMLA Upon belief, this termination was because of Plaintiff's race, and because of the fact that Plaintiff filed a claim of discrimination against Defendant.

21. After Plaintiffs filed this complaint, the harassment has been ongoing, including but not limited to the writing of a racial epithet of Plaintiff Tims' locker.

**COUNT ONE**

**(Violation of 42 U.S.C. § 1981)**

All Plaintiffs allege this Count and reallege every paragraph of the Complaint.

22. Defendant Coke has intentionally and purposefully deprived Plaintiffs of equal rights in the making, enforcement, performance, formation, modification, benefits and privileges of contractual relationships, by discriminating against Plaintiffs based on race and color in violation of 42 U.S.C. § 1981 (a) and (b).

23. Defendant Coke has subjected Plaintiffs to a hostile and abusive work environment based on race and color, in violation of Plaintiffs' contractual rights:

1. The offensive and harassing behavior in Defendant Coke's workplace has been pervasive, frequent,

intense, unwelcome, severe and abusive;

2. The severity of Defendant Coke's hostile work environment has altered and adversely affected the enforcement, performance, terms, conditions, benefits and privileges of Plaintiffs' employment contracts, resulting in tangible impact on Plaintiffs' employment;

3. Defendant Coke failed to prevent the racially hostile workplace conduct and, despite substantial notice of the conduct, failed to implement sufficient preventative, investigative, corrective and remedial action; and

4. Defendant Coke's harassment of Plaintiffs violates 42 U.S.C. § 1981.

24. Plaintiffs' resistance to the deprivation of contractual rights is protected conduct. Defendant Coke has retaliated against Plaintiffs, imposing unwarranted scrutiny, hostility and intimidation.

25. Defendant Coke's unlawfulness comprises many incidents of related behavior, results from Defendant's ongoing policies and practices, and is a continuing violation of 42 U.S.C. §1981.

26. As a direct and proximate result of Defendant Coke's violations of 42 U.S.C. § 1981, Plaintiffs have incurred substantial damages, including but not limited to, mental anguish, severe emotional distress, pain, suffering, physical and

bodily injury ad physical sickness, lost income, diminished earning capacity and other losses, exceeding $50,000.00.

**COUNT TWO**

**(Violation of the Minnesota Human Rights Act,**

**Minn. Stat. §§ 363.01-.20)**

Plaintiffs Howard, A. Smith, C. Smith, Stringer, Tims and Traylor allege this Count and reallege every paragraph of the Complaint.

27. Defendant Coke has committed unlawful employment practices by intentionally discriminating against Plaintiffs based on race and color, in violation of the Minnesota Human Rights Act. Minn. Stat. §§ 363.01-.20, including § 363.03 subd. 1(2).

28. Defendant Coke has subjected Plaintiffs to a hostile and abusive work environment based on race and color:

a. The offensive and harassing behavior in Defendant Coke's workplace has been pervasive, frequent, unwelcome, severe and abusive;

b. The severity of Defendant Coke's hostile work environment has altered and adversely affected the terms, conditions or privileges of Plaintiffs' employment.

c. Defendant Coke has failed to prevent the racially hostile workplace conduct and, despite substantial notice of the conduct, failed to implement

sufficient investigative, corrective and remedial action; and

d. Defendant Coke's harassment of Plaintiffs violates the Minnesota Human Rights Act.

29. Defendant Coke has taken reprisals against Plaintiffs, by singling them out for intimidation, increased hostility and harassment, unwarranted scrutiny, ostracism and other adverse employment action, because Plaintiffs oppose unlawful employment practices and have associated with persons who oppose such practices. Such reprisal violates Minn. Stat. § 363.03 subd. 7.

30. The running of the limitations period on Plaintiffs' MHRA claims was suspended during settlement negotiations.

31. As a direct and proximate result of Defendant Coke's discrimination, harassment and reprisal, Plaintiffs have incurred substantial damages, as detailed above, including but not limited to, mental anguish, severe emotional distress, pain, suffering, personal injury, physical injury, bodily injury, physical sickness, lost income, diminished earning capacity and other losses to be proven, exceeding $50,000.00

**COUNT THREE**

**(Negligence)**

Plaintiffs reallege every paragraph of the Complaint.

32. Defendant Coke had a duty, as property owner, to exercise reasonable care to prevent foreseeable harm to Plaintiffs, including the foreseeable bad acts of third parties.

33. Defendant Coke also had a duty to use reasonable care in the training, retention and supervision of its employees.

34. Defendant Coke breached its duty of care to Plaintiffs by failing to use due care to prevent foreseeable harm, including the foreseeable tortious acts of white employees. Defendant Coke negligently inflicted emotional distress upon Plaintiffs by exposing them to direct invasions of their rights.

35. Defendant Coke had ample notice of the racial hostility toward non-whites pervading its workplace, yet failed to exercise due care in providing training, security and other precautions to prevent harm to Plaintiffs and other non-white employees.

36. Defendant Coke is vicariously liable for the acts of its agents that occur on company premises during work hours, and acts that occur within the scope of employment.

37. As a direct and proximate result of Defendant Coke's illegal behavior, Plaintiffs have incurred substantial damages, as detailed above, including but not limited to, mental anguish, severe emotional distress, pain, suffering, physical injury, bodily injury, physical sickness, and other economic and noneconomic losses to be established at trial, exceeding $50,000.00

**COUNT FOUR**

**(Constructive and Wrongful Discharge)**

38. Defendant Coke's discrimination, harassment and other

illegal behavior made Plaintiffs' work environment so hostile and abusive that neither they, nor any reasonable person, could be expected to continue working there.

39. Defendant Coke constructively or wrongfully discharged Plaintiffs.

40. As a direct and proximate result of Defendant Coke's illegal behavior, Plaintiffs have incurred substantial damages, as detailed above, including but not limited to, mental anguish, severe emotional distress, pain, suffering, physical injury, bodily injury, physical sickness, and other economic and noneconomic losses to be established at trial, exceeding $50,000.00.

**COUNT FIVE**

**RACE DISCRIMINATION**

Plaintiffs reallege each and every paragraph of this Complaint.

41. Defendants use a person's race as a determining factor in its employment decisions in violation of Title VII (42 U.S.C. §2000e, et seq.) and the Minnesota Human Rights Act (Minn.Stat. §363.01, et seq.). In addition Plaintiffs have been subject to a hostile work environment in violation of Title VII (42 U.S.C. §2000e, et seq) and the Minnesota Human Rigths Act (Minn.Stat. § 363.01, et seq.).

42. The conduct of Defendants constitute discrimination in

employment on the basis of race, in violation of Minn. Stat. § 363.01, et seq. and Title VII.

43. Defendant treated Plaintiffs differently in the terms and conditions of his employment because of his race.

44. Defendant's hiring and employment decisions and practices based on race adversely impacts Plaintiffs and other minorities.

45. The conduct alleged constitutes a continuing violation.

46. Said discrimination included both disparate treatment and adverse impact against Plaintiffs because of their race.

47. As a direct and proximate result of Defendants' conduct, Plaintiffs has suffered and will continue to suffer humiliation, lost wages, emotional distress and other harm.

**COUNT SIX**

**REPRISAL**

Plaintiffs reallege each and every paragraph of this Complaint.

48. Defendants have engaged in a course of retaliation and reprisal against Plaintiffs because they complained about the racially discriminatory behavior and because of his complaint of racial harassment, in violation of Minn. Stat. § 363.03, Subd. 7 and Title VII.

49. As a direct and proximate result of Defendant's conduct, Plaintiffs have suffered and will continue to suffer humiliation, embarrassment, mental and emotional distress, and

damage to reputation, as well as lost income and benefits, past and future.

50. Plaintiffs have received a Notice of Right to Sue from the Minnesota Department of Human Rights and The Equal Employment Opportunity Commission. This Supplemental Complaint is timely served.

**COUNT SEVEN**

**VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT**

51. The actions of Defendant in terminating Plaintiff Abdul Smith's employment constitute violation of the Parenting Leave Act, Minn. Stat. § 181.940 et seq. as well as the Family Medical Leave Act 29 U.S.C. §2611 et seq.

52. As a direct and proximate result of Defendant's conduct, Plaintiff A. Smith has suffered and will continue to suffer emotional distress as well as loss of income and benefits, past and future.

WHEREFORE, Plaintiffs pray for the following relief:

1. A declaratory judgment that the practices complained of herein violate 42 U.S.C. §§ 1981a, 2000e et seq.; 42 U.S.C. § 1981; and the Minnesota Human Rights Act, Minn. Stat. §§ 363.01-.20, and other laws protecting employees.
2. An Order permanently restraining and enjoining Defendant Coke from discriminating against Plaintiffs, or anyone else, on any basis forbidden by law.

3. Damages and liquidated damages under the Family Medical Leave Act against Defendant in favor of Plaintiff Abdul Smith in an amount in excess of $75,000.

4. An Order enjoining and requiring Defendant Coke to develop, implement and enforce employment policies that effectively prevent and prohibit racially hostile workplace conduct, including race-motivated threats, racial slurs, epithets and insults, differential treatment based on race or color, retaliation/reprisal and similar racially hostile conduct.

5. An Order enjoining and requiring Defendant Coke to develop, implement and enforce procedures that effectively allow employees to assert, without fear of reprisal, the right to a workplace free from illegal conduct.

6. Compensatory damages and make-whole relief to reimburse each Plaintiff for the losses flowing from Defendant Coke's illegal conduct, including economic and noneconomic losses and special damages, to be proven at trial, in amounts exceeding fifty thousand dollars ($50,000.00) per Plaintiff.

7. Treble compensatory damages under Minn. Stat. §§ 363.071 subd. 2.

8. Punitive damages under Minn. Stat. §§ 363.071 subd. 2.

9. An award of costs, disbursements and expenses of this

action, including reasonable attorney fees, under 42 U.S.C. §§ 1988(b), 2000d-5(k), Minn. Stat. § 363.14 subd. 3., and the Family and Medical Leave Act.

10. Such other and further relief, in law and equity, including preliminary relief, as is just and proper.

**Plaintiffs demand a trial by jury on issues triable to a jury.**

THE COOPER LAW FIRM, CHARTERED

Dated: August 9, 2001 By: ______________________________

Stephen W. Cooper, Lic. 18788
Kathryn J. Cima, Lic. 228059
Stacey R. Everson, Lic. 219277
Attorneys for Plaintiff
800 Ceresota Building
155 Fifth Avenue South
Minneapolis, MN 55401-2526
(612) 338-3533